UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80021-CR-GAYLES(s)

UNITED STATES OF AMERICA,

vs.

KERRI L. KALEY,

        Defendant.
_____/

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S SENTENCING MEMORANDUM

The United States hereby responds in opposition to defendant Kerri L. Kaley's Sentencing Memorandum [D.E.-608], and would show:

BACKGROUND

Defendant Kerri L. Kaley stands convicted, as a result of two separate jury trials, on the eight counts of the Superseding Indictment. The conviction at the most recent trial included conspiracy and substantive ITSP charges (Counts 1 through 6), as well as for a money laundering conspiracy (Count 7). In the November 2014 verdict defendant was convicted on the obstruction charge (Count 8).

DISCUSSION

I. **Kaley's sentence is warranted under the circumstances.**

Kaley's claim that a Guidelines Sentence is inappropriate because it is disparate from the sentences of her co-conspirators, or the national average, misinterprets the statute and misapplies prevailing case law. 18 U.S.C. § 3553(a)(6) provides that the court should avoid "*unwarranted*

1

sentence disparities among defendants with *similar records* who have been *found guilty of similar conduct*." Curiously, defendant focuses primarily on the disparity in potential sentences, and largely leaves unaddressed the virtual chasm between record and conduct, and that of her confederates.

Kaley's comparison of her advisory Guideline sentence to the national average of all theft and fraud sentences is inappropriate because comparison to any generic average does not properly compare her to defendants with demonstrably similar records and similar conduct, as explicitly required by § 3553(a)(6).  A more rigorous examination of the Sentencing Commission information from which defendant derives the average 24-month sentence demonstrates that the median loss for offenders sentenced under § 2B1.1 was only $130,301 and 79.3% of offenses involved less than $1 million.[1] Kerri Kaley is accountable, by the jury's verdict, for a loss exceeding $8 million, which is not only significantly more than the median loss per offense, but also significantly more than the losses attributable to *most* of the criminals sentenced under § 2B1.1.  The defendant does not seek to conduct a comparison of her conduct and activities to defendants with similar records and guilty of similar conduct, but to a manifestly less culpable and injurious group with whom she would prefer to be associated.  If anything, the statistical information source she seeks to rely upon only serves to highlight the egregiousness of her fraudulent conduct.

Defendant's alternative argument that the properly calculated Guidelines advisory range is disparately greater than the sentences of her co-conspirators is similarly unavailing.  First,

---

1 *See* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY15.pdf.

defendant incorrectly compares her potential sentence with the circumstances and conduct of individuals who were never charged or were acquitted, and then seeks to persuade this Honorable Court that they are somehow "guilty of similar conduct." Yet § 3553(a)(6) by its plain language contemplates comparisons with individuals actually "found guilty of similar conduct."

Even more strained, defendant seeks to liken herself, her conduct, and her circumstances as equivalent to the several co-conspirators who were in fact charged, cooperated in the investigations and ensuing prosecutions, and ultimately pled guilty. Any such comparison is in direct contradiction with well-established Eleventh Circuit precedent.

In *United States v. Mateos*, the Court stated that there is no unwarranted sentencing disparity when a cooperating co-conspirator pleads guilty and receives a lesser sentence than a defendant who proceeds to trial. *Mateos,* 623 F.3d 1350, 1367 (11th Cir. 2010); *see also United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (stating such defendants not "similarly situated"); *United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008); *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009). In *Mateos*, the defendant received a 360-month sentence for her role in a healthcare fraud conspiracy. *Mateos,* 623 F.3d at 1367. In determining the defendant's sentence, the district court also considered her role as a leader in the offense and her lack of remorse, evidenced by her assertion of innocence even after conviction. All four of her co-conspirators cooperated with the government and three pled guilty, receiving sentences ranging from 24 to 95 months. *Id*. The Court of Appeals affirmed the sentence.

Likewise, any difference between Kerri Kaley's advisory Guideline range sentence and the actual sentences of her co-conspirators is not unwarranted, because they all pled guilty and cooperated with the government. *Id.* Kaley not only failed to cooperate with the government, but

3

she actively obstructed justice, a crime for which she has been convicted, and which is a material factor in her sentencing process, whether as a formally allowed numerical enhancement, or as a classic consideration for any jurist considering the facts and circumstances of a particular defendant appearing for sentence. Equally telling, defendant has shown no remorse for her crimes and taken no affirmative steps to mitigate the impact those crimes have had.

Defendant's reliance on *United States v. Neufeld,* 223 Fed. Appx. 887 (11th Cir. 2007), as a justification for a variance is misguided in light of the more recently decided *Mateos* family of cases.  In *Neufeld*, the district court found, and the 11th Circuit upheld, that an unwarranted disparity existed because no substantial difference in culpability could be identified between the defendant and his codefendants.  *Id*. at 889-90.  There is no factual similarity with the instant case, because Kerri Kaley stands convicted of additional crimes that were not applicable to some or all of her co-conspirators. She was, as the Court is aware, the sole "recruiter" of others to engage in the criminal activity. In fact, the evidence demonstrated that she engaged in a failed effort to recruit one of her colleagues early in the on-going theft activities, only to succeed in a later recruiting effort when he underwent financial reversals due to speculation in the stock market. Her pivotal role and greater culpability is also amply demonstrated by the fact that she was the exclusive link to the Florida-based outlet for the stolen medical devices. None of the others, had substantive dealings of any sort with Keith Danks, and only Kerri Kaley's husband had any access to direct information regarding the income being generated by the illegal shipments or knowledge of their true financial machinations. Only Kerri Kaley placed "consignment" orders with her colleagues to secure the latest and most desirable devices to sell – a clear indication of her pre-eminence in the conduct and her effective control over all the other participants. Lastly, as several published

4

Eleventh Circuit cases point out, there is no unwarranted disparity between the sentences of those who plead guilty and those who persist in litigation. Kaley's actions during the commission of her crimes, the investigation, and the subsequent prosecutions set her apart from her co-conspirators and warrant the significantly higher advisory Guideline calculation.[2]

## II. The nature and circumstances of the offense and Kerri Kaley's history and characteristics warrant a within-Guidelines sentence. § 3553(a)(1).

The crux of Kaley's argument for a reduced sentence through a variance to the sentence appropriate under the advisory Guidelines is that her personal history and personal characteristics overwhelm consideration of the all other 18 U.S.C. § 3553(a) factors. The weight accorded to any § 3553(a) factor is a matter within the sound discretion of the district court. *United States v. Amedeo,* 487 F.3d 823, 832 (11th Cir.2007); *United States v. Wynn*, 257 Fed. Appx. 160, 163 (11th Cir. 2007). A sentence within the Guidelines range is ordinarily expected to be reasonable. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). In requesting a below-Guidelines sentence, Kaley bears the burden of showing that her Guidelines sentence would be unreasonable in light of the record and the panoply of § 3553(a) factors, which the court is bound to consider in determining an appropriate sentence. *Id*. In an effort to support her argument, Kaley has assembled a collection of extreme examples of departures from the sentencing guidelines, drawn from the case law of other circuits. Kaley has to rely on such non-controlling case law because a departure as drastic as what she requests cuts against established Eleventh Circuit law, which has

---

2 It is intimated that the advisory Guideline calculation improperly penalizes defendant for exercising her right to hold the government to its proof at trial. This is a studied mischaracterization of what the Guidelines are addressing. A similar mischaracterization was popular in the pre-Guidelines era when defendants who testified during their trial and were found guilty subsequently complained when trial judges – notably the late Senior District Court Judge Jacob Mischler of the Southern District of New York would factor into the sentence the false testimony of the defendant. The argument that this was an improper infringement of the absolute right to testify was met by the Judge with the statement that the right was indeed absolute to testify, but not to present perjury. The Supreme Court concurred. See, e.g., *United States v. Grayson*, 438 U.S. 41 (1978).

5

held that "[d]epartures should only occur in unusual cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime." *United States v. Miller*, 146 F.3d 1281, 1284 (11th Cir. 1998).

### A. Kaley's history and characteristics

#### i. Kaley's family role is irrelevant in determining whether a departure is warranted.

Kaley's argument that her role in her family justifies a departure from the Sentencing Guidelines is unfounded in law and unsupported by fact.  Per the Guidelines: "Family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. 5H1.6.  The Eleventh Circuit has repeatedly held that downward departures on the basis of family responsibilities in cases far more extreme than Kaley's are inappropriate.  *See United States v. Cacho*, 951 F.2d 308, 310 (11th Cir. 1992) (holding downward departure not warranted where defendant had four small children); *United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir. 1992) (finding that defendant who had two minor children and supported her mother not extraordinary enough to warrant departure); *United States v. Allen*, 87 F.3d 1224, 1225 (11th Cir. 1996) (holding downward departure not warranted where defendant primary caretaker of parent with Alzheimer's and Parkinson's diseases).  Each of these cases present considerably more compelling family obligations and responsibilities than those posed in the instant matter, and manifestly reflect that family ties and responsibilities are strongly disfavored as a basis for straying from the advisory Guidelines. Kerri Kaley has failed to demonstrate that her personal circumstances warrant such a departure – even though cast in terms of a variance.

The letters provided by Kaley in support of this argument only serve to describe Kaley's family relationship and do nothing factually to support that Kaley's family responsibilities are so

6

extraordinary as to be deemed relevant in consideration of downward departure.[3] Under Eleventh Circuit precedent, the ages of her children are not an "extraordinary" circumstance warranting a downward variance. The only cases Kaley provides in support of her argument that her family responsibilities justify a markedly reduced sentence are simply extreme examples from non-controlling jurisdictions, and inconsistent with Eleventh Circuit precedent.

### B. The nature and circumstances of the crime do not support a significant downward variance.

The Eleventh Circuit has offered extensive guidance to sentencing court's in matters involving significant white-collar fraud cases. The rational of many of the applicable cases is integrated into the Court's decision in *United States v. Kuhlman,* 711 F.3d 1321 (11th Cir. 2013), a health fraud matter wherein the trial court imposed a sentence that represented a variance from a Guideline range of 57 to 71 months to a probationary term. The Circuit vacated the sentence as unreasonable, and lacking in any meaningful relationship to the sentencing dictates of 18 U.S.C. § 3553(a).

Kuhlman was convicted, on his plea, or running a five-year fraud scheme, billing health insurance companies for services never rendered, to the tune of over $2.9 million. *Kuhlman,* 711 F.3d at 1324. As in the present matter, Kuhlman did not steal from need but simply from greed. *Id.*[4] Impressed by the fact that the defendant made full restitution just days before sentencing, the court *sua sponte* continued the sentencing hearing for six months, *Kuhlman,* 711 F.3d at 1325-

---

3 With regard to obligations to her children, over the extended life of this matter, the children have aged to the point that Kaley's sons are now sixteen, eighteen, and twenty-one years old. PSR at ¶ 57. Thus only a single child remains a minor at this juncture.

4 Kuhlman received a two-point enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3, the court recognizing that the insurance companies necessarily trusted and relied upon the honesty of his billing practices.

7

26. At the re-set sentencing he was given "time served" – a 20 level downward variance.

In an extensive discussion of white collar crime, the motives therefore, and the compelling need to secure general deterrence of such activity, the Eleventh Circuit reversed and remanded the case. The Court opined that Kuhlman, who stole only 30% of the value of the theft in the instant matter, was given a sentence that failed "to achieve an important goal of sentencing in a white-collar crime prosecution: the need for general deterrence.[5] The Guidelines state that a sentence should provide 'adequate deterrence to criminal conduct.' 18 U.S.C. § 3553(a)(2)(B)." *Kuhlman,* 711 F.3d at 1328. The Court expressed the fear that unreasonably lenient sentences in such cases delivered precisely the wrong message, to a criminally-minded group. As the Court stated:

> We also find the reasoning in *United States v. Martin* analogous to the case before us. 455 F.3d 1227 (11th Cir.2006). In *Martin,* we vacated a seven-day sentence for another participant in a billion-dollar securities fraud, criticizing the sentence as "shockingly short" and "wildly disproportionate" to the seriousness of the offense, even though the defendant's cooperation with the government was "extraordinary." *Id.* at 1238–39. We also noted that "the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white[-]collar criminals, even where those criminals might themselves be unlikely to commit another offense." *Id.* at 1240. We stated that "[b]ecause economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *Id.* (internal quotation marks omitted). Our basis for this determination was that "[d]efendants in white [-] collar crimes often calculate the financial gain and risk of loss, and white[-]collar crime therefore can be affected and reduced with serious punishment." *Id.*

*Kuhlman,* 711 F.3d at 1328-29.

Against Kuhlman's argument that several of the precedents relied upon involved more

---

5 On memorandum, D.E.-608 at 23, Defendant makes the absurd assertion that the government "agreed" that the practice of removing items from hospital storage areas and reselling them was a "gray area" or somehow appropriate "industry practice. In this District alone more than 25 convictions resulted from precisely that "practice," which was never viewed as a gray area when it involved, as demonstrated by the proof herein, outright theft of highly valuable product without authorization.

8

money or worse conduct, an argument the United States anticipates will be made to this Honorable Court, the Circuit noted:

> In an effort to differentiate his case from *Livesay*, *Martin*, and *Crisp,* Kuhlman argues that each of those cases involved more money or more egregious fraud. We need not dwell, however, on the dollar amount of those schemes, because the criminal motive in each case was the same as the motive here—greed.
>
> Kuhlman knowingly and methodically stole millions of dollars from insurance companies over a period of several years. The district court's sentence does not reflect the seriousness and extent of the crime, nor does it promote respect for the law, provide just punishment, or adequately deter other similarly inclined health care providers. We therefore find the sentence to be substantively unreasonable, and an abuse of the district court's discretion.

*Kuhlman,* 711 F.3d at 1329.

A 24-month sentence does not reflect the seriousness of the crime, promote respect for the law, impose just punishment, provide adequate deterrence, or adequately protect the public. § 3553(a)(2).

### III.  Kaley's forfeiture does not support a downward variance.

The payment of *extraordinary* restitution may be taken into consideration when contemplating a downward departure from the sentencing guidelines. *United States v. Kim*, 364 F.3d 1235, 1240-41 (11th Cir. 2004).  However, whether the restitution is extraordinary in the sense that permits consideration depends on several factors, such as: "the degree of voluntariness, the efforts to which a defendant went to make restitution, the percentage of funds restored, the timing of the restitution, and whether the defendant's motive demonstrates sincere remorse and acceptance of responsibility." *Id*. at 1244.  In *Kim*, the defendants were indicted on fraud charges and pled guilty. *Id*. at 1238.  The court of appeals determined the defendants' restitution was extraordinary because (1) the defendants paid the entire fraud loss even though they benefitted from only two-thirds of the amount; (2) they liquidated three-fourths of their life savings and

borrowed $200,000 from friends and family; (3) one of the defendants demonstrated her remorse by securing enormous loans to pay of the restitution and passing a lie detector test but still pled guilty to a charged crime; (4) the entire restitution amount was paid off by the date of sentencing; and (5) the district court found the defendants were sincerely remorseful. *Id*. at 1244-45.

Kaley has made nowhere near the effort to atone for her crimes that the *Kim* defendants did. Kaley's forfeiture is only a fraction of the entire fraud loss. She has made no extraordinary effort to secure the funds, and the restitution will not be paid in full at the time of sentencing. She has never accepted responsibility for any of the crimes committed by pleading guilty. Further, she tried to hide her involvement by obstructing justice. The overriding message of *Kim* is that the defendants felt bad for what they had done and were willing to do whatever they could to make it right. As soon as they were indicted they took responsibility for their actions and started paying off the restitution. They deserved a downward variance. Kaley has not expressed any remorse for her crimes and has never taken any responsibility for her actions. Her eleventh hour forfeiture is too little, too late.

## **CONCLUSION**

Based on the foregoing, the United States respectfully prays this Honorable Court to deny defendant's various requests to vary from the Sentencing Guideline range applicable in this matter, contained in her Sentencing Memorandum [D.E.-608], and impose a significant sentence, consistent with the precedent of this Circuit, that will constitute a credible deterrence to other individuals inclined to engage in patterns of fraud and theft that span almost 10 years and involve millions of dollars in private property diverted to their own economic benefit. The United States

will make its specific sentencing recommendation at the Sentencing Hearing scheduled for December 2, 2016.

>
> Respectfully submitted,
>
> WIFREDO FERRER
> UNITED STATES ATTORNEY
>
> By:   s/ Thomas A. Watts-FitzGerald
> Assistant United States Attorney
> Fla. Bar No. 0273538
> 99 N.E. 4th Street - 4TH Floor
> Miami, Florida   33132
> Telephone: (305) 961-9413

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

> s/ Thomas A. Watts-FitzGerald
> Assistant United States Attorney

### SERVICE LIST

**UNITED STATES v. KERRI L. KALEY, et al.,
Case No. 07-80021-CR-GAYLES (S)
United States District Court, Southern District of Florida**

| | |
|---|---|
| Howard M. Srebnick, Esq. | David O. Markus & Margot Moss, Esqs. |
| 201 S Biscayne Blvd., Ste. 1300 | 40 N.W. Third Street, PH-1 |
| Miami, Florida, 33131-4333 | Miami, Florida 33128 |
| Telephone:  305-371-6421 | Telephone:  305-379-6667 |
| Counsel for BRIAN P. KALEY | Counsel for KERRI L. KALEY |
| Service by CM/ECF | Service by CM/ECF |

11